David A. THOMPSON, Patricia Long, Jim Westbrook, James Lahmeyer, Eugene Kreves, and Kenneth Essington on behalf of themselves and all others similarly situated, Plaintiffs,

v.

EDWARD D. JONES & CO., et al., Natural Resource Management Corporation, and EDJ Leasing Co., et al., Defendants.

No. LR–C–87–247.

United States District Court, E.D. Arkansas, Western Division.

July 19, 1993.

See also 820 F.Supp. 1156.

Kenneth R. Shemin, Rose Law Firm, Little Rock, AR, for plaintiff David A. Thompson.

G. Verne Goodsell, Gunderson, Palmer, Goodsell & Nelson, Rapid City, SD, for Marilynne Harris.

Steven T. Shults, Shults, Ray & Kurrus, Little Rock, AR, Stephen S. Muhich, Dykema Gossett, Grand Rapids, MI, and Bruce C. Oetter, Helen P. Gab and Bryan Cave, St. Louis, MO, for Edward D. Jones & Co., David A. Nyquist and Thomas J. Neumann.

## ORDER

ROY, District Judge.

Now before the Court is the defendants' Motion to Enforce Injunction Against Plaintiff Patricia Martin [1] (DOC # 204) and plaintiff Martin's related Motion for Relief from Judgment (DOC # 206). In the Court's previously entered Order of August 14, 1992 (DOC # 184), the Court made several findings of fact and conclusions of law, which are restated herein in part:

Separate plaintiff Patricia A. (Mengel) Martin is a person who purchased a limited partnership interest in Natural Resource Management Corporation Oil and Gas Income Fund, 83–A ("NRM") on or about February 10, 1983. This Court has previously found that the purchasers of NRM 83–A received the best possible notice of the Court's class action order identifying them as prospective members of the class, pursuant to Rule 23 of the Federal Rules of Civil Procedure. Indeed, it is not contested that Martin was a member of the *"Thompson"* class and received notice of the *Thompson* class action settlement.

Furthermore, it is not disputed that, on or about September 12, 1988, Martin originally sought to "opt out" of the *Thompson* class action settlement as she states in her affidavit. She did this in the form of a certified letter which she signed herself. The letter was written on the stationery of Martin's law firm in Michigan, *Wisti & Jaaskelainen, P.C.*

The dispute centers around whether Martin revoked her decision to opt out. In her brief on this point, she maintains that she never wished to be included in the class action and that after she wrote her September 12, 1988 letter, she never took any step in an effort to opt back in.

However, the file indicates that subsequent to Martin's opt-out request, the attorneys in this case representing *the class*, and ostensibly acting on her behalf, filed a motion seeking court approval to revoke her opt-out status, along with that of a small number of other parties. On March 15, 1989, this Court granted said motion, thereby including Martin back in the class.

The defendants argue that Martin should be enjoined from pursuing claims against Edward D. Jones & Co. in any other jurisdiction. They particularly object to her participation in a lawsuit in Michigan, *Catherine VanDonsel, et al. v. Edward D. Jones, et al.*, No. 91–10766–CK (Delta County Circuit Court) (*VanDonsel II*).[2] They contend that "[a]s a matter of law, plaintiff's intent [to opt out] is irrelevant; she is bound by the acts of her attorneys representing her in the class action." It seems that this argument presupposes that "her attorneys" asked for her opt-out status to be revoked. There is no question that attorneys for the class, i.e., the Rose Law Firm, filed a request to have Martin's opt-out status revoked. However, there is a considerable question as to whether they

1. In this Order Ms. Martin is frequently referred to as a plaintiff in this class action. In a manner of speaking, that is begging the question because it is the essence of her position that except for a brief period of time between the certification of the class and her "opting out," she was *not* a plaintiff in this proceeding.

2. Ms. Martin, as a class member, first filed suit in federal court in March of 1987 in the matter of *Catherine VanDonsel v. Edward D. Jones Co., et al.*, No. M87–76–CA (W.D.Mich.) (*VanDonsel I*).

After a transfer to a multi-district panel in Colorado, and a subsequent transfer back to Michigan, the District Court for the Western District of Michigan declined to exercise pendent jurisdiction over Ms. Martin's state claims and dismissed those claims without prejudice.

Her state claims, along with those of other class members, were filed in the Delta County Michigan Circuit Court on or about August 13, 1991 (*VanDonsel II*).

were actually representing her, especially after she had opted out.

If defendant, as she stated in her affidavit, never wanted to participate in the class, if she took the affirmative step of opting out of the class (with the help of a law firm not representing the class), if she was never notified by the Rose firm, or any other attorneys for the class, that they were including her name on a list of those whose opt-out status was to be revoked by a special order of the Court, then there would seem to be insufficient reason to enjoin Martin from bringing her action in another jurisdiction.

\*     \*     \*

The Court, in the August 14, 1992 order, denied defendants' request to hold Martin in contempt, and ordered that if the defendants wanted:

> to further pursue this matter as to Ms. Martin, [they] may repetition the Court but only if more evidence is offered to show that attorneys for the class a) *ever* represented Martin; or b) they were representing her after she opted out (and she was then no longer a member of the class.

*Court's Order* at 3.

No evidence of that type has been presented. Instead, the defendants have argued that regardless of whether the inclusion of Ms. Martin in the group of people requesting their "opt-out" to be revoked was a mistake, the only way to remedy the error would be for her to make a motion for relief from the Court's revocation order pursuant to Rule 60 of the Federal Rules of Civil Procedure (which she has now done).

Before discussing Rule 60, the Court will point out that an examination of clerk's office procedures and records indicates that apparently neither Ms. Martin nor her attorney received two important orders of this Court at the time of their entry: the order revoking her opt-out status on March 15, 1989, and this Court's "show cause" order directed to her, entered January 31, 1992.[3]

At the time the former order was entered, it was the practice of the clerk's office to indicate what parties in an action were sent copies of entered orders by writing their names in the upper left-hand corner of the order's front page. By the time the latter order was entered, the office had adopted its current practice of attaching to the back of each order a computer generated list of parties to whom copies of the order were sent. An examination of the original orders reveals no indication that either Ms. Martin or her attorney received copies of either order.

With regard to Rule 60, the Court agrees with the defendants that the inclusion of Ms. Martin in the revocation order was not a "clerical mistake" within the meaning of Rule 60(a).[4] Defendants also argue that no part of paragraph (b) applies. That paragraph provides, in pertinent part, as follows:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) *any other rea-*

---

3. After attempting unsuccessfully in Michigan to halt Ms. Martin's action there, defendants filed in this Court their motion for Ms. Martin to show cause why she should not be held in contempt for violating this Court's Final Order in this case (which enjoined the class members not opting out from bringing NRM related claims against the defendants). This Court issued such a show cause order on January 31, 1992.

4. **(a) Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at anytime of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

Rule 60(a) (in pertinent part).

*son justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. * * *

Rule 60(b) F.R.C.P. (emphasis added).

Because more than one year has passed since the judgment's entry, the only clause in paragraph (b) which might apply is "6" ("any other reason"). Plaintiff argues that principles of equity warrant giving her relief from the revocation order, despite the large amount of time that has passed from the time of its entry.

The defendants characterize the length of time the plaintiff waited to act as being "almost four years." However, the Court finds that to be an exaggeration. It is true that the time from the entry of the revocation order, March 15, 1989, until the date plaintiff filed for relief from same under Rule 60, February 4, 1993, is almost 47 months.

However, there is little evidence that Ms. Martin knew of the revocation order until defendants filed their motion for summary judgment and brief in *VanDonsel I.* That pleading was filed on October 9, 1990 and specifically argued that the revocation order made her subject to the injunction against pursuing claims in other jurisdictions. "Plaintiff initially requested exclusion from the class but subsequently requested the *Thompson* Court to revoke her opt-out status and to allow her to participate in the *Thompson* settlement. The *Thompson* Court granted plaintiff's request and ordered her opt-out status revoked." Memorandum in support of defendants' motion for partial summary judgment in *VanDonsel I* at 3 (emphasis added).

The defendants have argued that Ms. Martin was in fact aware that this was defendants' position "by March of 1990 at the latest, when defendants filed their answer ... in *VanDonsel.*" It is true that the answer contained, out of fifteen pages, one sentence which stated that "[b]y virtue of a class action settlement regarding NRM investments, plaintiffs have released their

claims ... against defendants." However, the answer in question addressed generally the complaint of the several plaintiffs and was not directed to Ms. Martin's cause specifically.

The Court finds that this brief reference to NRM settlements, standing alone, was insufficient to put Ms. Martin or her attorneys on notice that an order had been entered by this Court in Arkansas revoking her opt-out status.[5] Given that Ms. Martin had already opted-out of the Arkansas action, and that she had no reason at that time to believe that her status had been revoked, there was little reason for her to believe that the generic mention of settled class action claims had anything to do with her. Therefore, it is the Court's finding that Ms. Martin was not aware of the revocation order until about October 9, 1990.

The matter of whether Ms. Martin should be enjoined from proceeding with NRM related claims in other jurisdictions was first raised in this court by the defendants on December 18, 1991. As set out on pages 4 and 5 above, the Court issued its first show cause order to Ms. Martin on January 31, 1992, which she did not receive. After a second order was issued on March 17, 1992, Ms. Martin promptly filed her first brief on the subject on April 6, 1992.

Thus, though the period from Ms. Martin's first finding out about the revocation order until pleadings were filed in the Eastern District of Arkansas was more than 14 months, it was nowhere near the four years suggested by the defendants.

* * *

This Court has repeatedly demonstrated its willingness to enforce the permanent injunction in effect in this case against class members who have sought to bring related actions in other jurisdictions. *See, e.g., Order re: Marilynne Harris entered August 24, 1992,* 820 F.Supp. 1156, *affirmed,* 992 F.2d 187 (8th Cir.). The Court is mindful of the important policy considerations regarding certainty, finality, permanence, etc. in the settlement of class action lawsuits.

---

5. Another portion of defendants' answer admitted that Ms. Martin invested money with the defendants but denied generally the remainder of any allegations brought by her.

Nevertheless, after considerable deliberation, the Court concludes that the plaintiff's motion for relief from the revocation order should be granted. The most significant factors the Court has considered are the defendants' failure to produce any evidence that the plaintiff ever affirmatively sought to have her opt-out status revoked, the evidence from the clerk's office that Ms. Martin did not received a copy of the order revoking her opt-out status, and Ms. Martin's unrebutted affidavit regarding her knowledge and actions.[6] Furthermore, and just as significant, denying the motion would absolutely and forever bar the plaintiff from ever having her day in court concerning her allegations that defendants wrongfully lost thousands of dollars of her money.

The Court has not lightly considered the defendants' argument that plaintiff's motion for relief was not filed within a "reasonable time" as required by the Rule. However, the Court respectfully suggests that the defendants' claims of prejudice caused by the delay are somewhat overstated, and in any event, would not justify the harsh result of barring Ms. Martin from bringing her claim in another jurisdiction.

6. The essence of Ms. Martin's position may be found in the final three numbered paragraphs of her affidavit attached to her response to the Court's show cause order:

> 7. ... [I]t always was and continues to be my desire and intent to opt out of the Arkansas class action litigation.
> 8. ... I do not know why the United States District Court in the Eastern District of Arkansas, Western Division, listed my name as an opt out revoked, as I did not revoke my opt out status.
> 9. ... [T]he list containing my name as an opt out revoked subsequent to the October 20, 1988, Court Order is clearly in error as I did not revoke my opt out status.

*Affidvait* at 2.

Furthermore, both Ms. Martin and her Michigan attorney, Mr. Zappa, have stated under oath in recent depositions that neither of them directed the Rose Law Firm, the class' attorneys, to revoke her opt out status. Furthermore, both have sworn that neither received any notice that the revocation occurred until defendants made their summary judgment motion in *VanDonsel.*

The only affidavits offered in response by defendants are one from one of defendants' attorneys wherein he states he received a letter from the Rose firm indicating, among a great many

The Court believes that the language of Rule 60(b)(6) is present for the purpose of allowing a Court the flexibility to "do justice" in unusual situations not specifically addressed by the first five clauses of paragraph (b).

The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott v. United States,* 335 U.S. 601 [69 S.Ct. 384, 93 L.Ed. 266] (1949), while also cautioning that it should only be applied in "extraordinary circumstances." *Ackermann v. United States,* 340 U.S. 193 [71 S.Ct. 209, 95 L.Ed. 207] (1950). * * * We must continuously bear in mind that "to perform its high function in the best way 'justice must satisfy the appearance of justice.'" *In re Murchison,* 349 U.S. 133, 136 [75 S.Ct. 623, 625, 99 L.Ed. 942] (1955) (citation omitted).

*Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864–65, 108 S.Ct. 2194, 2204–05, 100 L.Ed.2d 855. The Court concludes that such "extraordinary circumstances" exist here.

other things, that a small number of class members, including Ms. Martin, wished to revoke their opt-out status. Another is an affidavit from attorney Jerry Jones of the Rose firm submitted for the purpose of putting into the record a copy of the Notice of the Proposed Settlement and Instructions and Proof of Claim Form.

Notably absent from these affidavits, or anything else submitted by the defendants, is *any* proof that Ms. Martin, either directly or through her attorney, asked the Rose firm to revoke her opt-out status. Defendants dismiss as highly unlikely Ms. Martin's suggestion that staff of the Rose firm made a honest mistake in including her name on the revocation list. However, as one of defendants' attorneys mentioned during Mr. Zappa's deposition, "there was a lot of information, a lot of documents floating around...."

Furthermore, the only other possible explanation is that Ms. Martin and/or Mr. Zappa have been repeatedly lying, which the Court does not believe to be the case. Thus, the only remaining explanation, however unlikely, is that Ms. Martin's name was mistakenly added to the list. As Holmes once instructed Dr. Watson: "When you have eliminated the impossible, whatever remains, however improbable, must be the truth." *Sir Arthur Conan Doyle, The Sign of Four; Ch. 6 (1890).*

As was the case in *Klapprott*, the plaintiff is asking an order "be set aside so that for the first time [s]he may [litigate] on the merits." *Klapprott*, 335 U.S. at 615, 69 S.Ct. at 390. For the foregoing reasons, the Court finds that Ms. Martin should be granted the relief requested. To do otherwise would result in manifest injustice.

Accordingly, Patricia Martin's motion for relief is granted. Similarly, the defendants' motion to enforce the applicable injunction against Ms. Martin is denied. All other related motions are rendered moot.

IT IS SO ORDERED.